**Jamal Lance ADAIR, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–08–00183–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 10, 2010.

Discretionary Review Refused
March 30, 2011.

Angela Cameron, Houston, TX, for Appellant.

Jessica A. McDonald, Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Justices JENNINGS, HANKS, and BLAND.

## OPINION

GEORGE C. HANKS, JR., Justice.

A jury found, appellant, James Lance Adair, guilty of the offense of possession of methylenedioxy methamphetamine (commonly known as "ecstasy"), weighing between 4 and 400 grams,[1] and, after appellant pleaded true to two enhancement paragraphs, the trial court assessed his punishment at confinement for twenty-five years. In three issues, appellant contends that the trial court erred in denying his *Batson*[2] challenge, the evidence was legally insufficient to show that his prior convictions were final for enhancement purposes under section 12.42 of the Texas Penal Code,[3] and the trial court erred in overruling his objection to the State's improper jury argument that he was a "dope dealer," "not just an addict," and "the problem."

We affirm.

---

1. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.103(a)(1) (Vernon 2003 & Supp. 2007), § 481.116(d) (Vernon 2003).

2. *Batson v. Kentucky*, 476 U.S. 79, 86, 106 S.Ct. 1712, 1717, 90 L.Ed.2d 69 (1986).

3. *See* TEX. PENAL CODE ANN. § 12.42 (Vernon Supp. 2009).

## Factual and Procedural Background

On April 12, 2007, Houston Police officers conducted surveillance of a business prior to executing a search warrant on the business. Officers observed heavy foot traffic and activity around the business, and they concluded based upon their observations that narcotics were being sold at the business. Officer R. Jordan testified that, while conducting surveillance outside the business, he saw appellant exit the business, get into a car parked on a road near the business, and drive the car directly in front of the front door of the business. Appellant then exited the car, opened the back door, and unloaded two bags from the car. Appellant then walked back into the business holding the bags. Jordan stated that one bag resembled a bowling bag and the other bag resembled a square briefcase.

Jordan stated that, shortly thereafter, a team of officers executed the search warrant and entered the business. After the team of officers secured the business and waved Jordan inside, Jordan identified appellant among a room full of other individuals who had been apprehended by the team of officers. Jordan also identified the two bags that he had seen appellant take into the business.

Officer Sinegal, who was among team of officers executing the search warrant, testified that when he and the team of ten officers entered the business, appellant and the other individuals inside the business attempted to flee. Officer Jordan then entered the business, identified appellant, and pointed out the two bags that he had seen appellant carrying. In one of the bags, officers found several bags that were individually sealed and contained white pills subsequently determined to be ecstacy and another bag that contained additional pills. There was also a large bottle of codeine and codeine-type syrup. In addition, officers found—inside and throughout the business—codeine, crack cocaine, marijuana, ecstacy, and other narcotics, along with narcotics paraphernalia. The officers arrested appellant and six other individuals who were inside the business. Officers discovered that appellant had $1200, a cell phone, and a book that Officer Sinegal described as a "drug ledger" with references to names, dollar amounts, and various types of narcotics, including ecstacy, in his possession. When asked what a drug ledger is, Sinegal explained, "Drug dealers, if they sell narcotics, most times they'll keep amounts of narcotics sold, if any money is owed due to narcotics, and pretty much running a tally of the street total they should receive from the narcotics sold."

## Batson Challenge

In his first issue, appellant contends that the trial court erred in denying his Batson challenge. See, e.g., Batson v. Kentucky, 476 U.S. 79, 86, 106 S.Ct. 1712, 1717, 90 L.Ed.2d 69 (1986). Appellant asserts that the record rebuts the State's proffered reasons for striking two African–American venire members, juror numbers 7 and 39. Appellant further asserts the State used 60% of its peremptory strikes against African–Americans when the eligible panel was made up of 32% African–Americans and that the State "executed strikes against blacks but did not strike similarly situated non-blacks."

Following voir dire, the trial court asked the parties if there were any objections to seating the jury. Appellant asserted a Batson challenge, complaining that the State "used six of their ten strikes to strike blacks." The trial court responded that there were three African–Americans seated on the jury and at least three Hispanics on the jury. The trial court further stated it had not observed any systematic

racial strikes by this particular prosecutor in previous cases. The trial court then instructed the State to offer any explanations for its strikes, if it had any.

The State then explained its reasons for striking the six African–American jurors identified by appellant in his *Batson* challenge.[4] In regard to the two jurors identified by appellant on appeal, the State explained that it struck juror number 7 for several reasons, including the fact that he was unemployed. The State explained it struck juror number 39 because he put "no information on his juror information card." The State also offered race-neutral explanations as to the other challenged jurors, and these explanations are not challenged on appeal. After the State proffered its race-neutral explanation, the trial court gave appellant's trial counsel the opportunity to respond, but counsel indicated he did not have anything further.[5] The trial court found the State's explanations to be race-neutral and denied appellant's *Batson* challenge.

### A. Applicable Law

The use of a peremptory challenge to strike a potential juror because of race violates the equal protection guarantee of the United States Constitution and Article 35.261 of the Texas Code of Criminal Procedure. *See Batson* at 476 U.S.at 86, 106 S.Ct. at 1717; TEX.CODE CRIM. PROC. ANN. art. 35.261 (Vernon Supp. 2009). In the face of perceived purposeful discrimination, a party may request a *Batson* hearing. TEX.CODE CRIM. PROC. ANN. art. 35.261.

*Batson* provides a three-step process for a trial court to use in adjudicating a claim that a peremptory challenge was based on race. *Snyder v. Louisiana,* 552 U.S. 472, 476–77, 128 S.Ct. 1203, 1207, 170 L.Ed.2d 175 (2008); *Watkins v. State,* 245 S.W.3d 444, 447 (Tex.Crim.App.2008), *cert. denied,* —— U.S. ——, 129 S.Ct. 92, 172 L.Ed.2d 78 (2008). The opponent of a peremptory challenge must first make a prima facie case that the peremptory challenge was exercised on the basis of race. *Snyder,* 552 U.S. at 476, 128 S.Ct. at 1207; *Watkins,* 245 S.W.3d at 447. If that showing has been made, the burden of production shifts to the proponent of the strike to offer a race-neutral basis for striking the juror in question. *Snyder,* 552 U.S. at 476–77, 128 S.Ct. at 1207; *Watkins,* 245 S.W.3d at 447. In *Purkett v. Elem,* the United States Supreme Court explained that the issue in step two is the facial validity of the prosecutor's explanation, and "[u]nless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." 514 U.S. 765, 768, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995) (internal quotations omitted); *see also Williams v. State,* 301 S.W.3d 675, 689 (Tex.Crim. App.2009). In the third and final step, the trial court must determine whether the opponent of the strike has carried his burden to prove purposeful discrimination. *Snyder,* 552 U.S. at 477, 128 S.Ct. at 1207; *Young v. State,* 283 S.W.3d 854, 866 (Tex. Crim.App.2009). Throughout the challenge, the burden of persuasion remains with the defendant, who may continue to rebut the prosecutor's explanations before the trial court decides the *Batson* challenge. *Moore v. State,* 265 S.W.3d 73, 78 (Tex.App.-Houston [1st Dist.] 2008, no

---

4. Appellant did not challenge the striking of one other African–American, admitting that this juror was a problem for all parties.

5. Appellant never attempted to rebut the prosecutor's explanations at trial. Appellant never indicated to the court that he believed the explanations to be a pretext. Also, appellant never attempted to make a comparative analysis of the information on the juror information cards to the trial court.

pet.) (citing *Purkett*, 514 U.S. at 768, 115 S.Ct. at 1771).

Where the State has offered a race-neutral explanation for the strikes, the defendant must prove that the prosecutor's reasons were merely a sham or pretext. *Watkins*, 245 S.W.3d at 447. "The ultimate plausibility of that race-neutral explanation is to be considered as part of the third step of the analysis, in which the trial court determines whether the opponent of the strike (usually the defendant) has satisfied his burden of persuasion to establish by a preponderance of the evidence that the strike was indeed the product of the proponent's purposeful discrimination." *Id.* "Whether the opponent satisfies his burden of persuasion to show that the proponent's facially race-neutral explanation for his strike is pre-textual, not genuine, is a question of fact for the trial court to resolve in the first instance." *Id.*

**B. Standard of Review**

■ "On appeal, a trial court's ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous." *Snyder*, 552 U.S. at 477, 128 S.Ct. at 1207; *see also Watkins*, 245 S.W.3d at 447. To hold that a fact-finder's decision was "clearly erroneous," the record must leave us with a "definite and firm conviction that a mistake has been committed." *Hill v. State*, 827 S.W.2d 860, 865 (Tex.Crim.App. 1992); *see also Hernandez v. New York*, 500 U.S. 352, 369, 111 S.Ct. 1859, 1871, 114 L.Ed.2d 395 (1991) (holding that a trial court's finding will not be disturbed unless the appellate court is " 'left with a definite and firm conviction that a mistake has been committed' ") (internal citation omitted).

■ "We review the record of a *Batson* hearing and the voir dire examination in the light most favorable to the trial court's ruling." *Young v. State*, 283

S.W.3d 854, 866 (Tex.Crim.App.2009) (en banc). We must give great deference to credibility and demeanor determinations made by the trial court in connection with a *Batson* inquiry. *Snyder*, 552 U.S. at 477–79, 128 S.Ct. at 1208 (observing that "the best evidence of discriminatory intent often will be the demeanor of the attorney who exercises the challenge"). We may not substitute our opinion for the trial court's factual assessment of the neutrality of the prosecutor's explanation for exercising strikes. *Gibson v. State*, 144 S.W.3d 530, 534 n. 5 (Tex.Crim.App.2004); *see Snyder*, 552 U.S. at 477–79, 128 S.Ct. at 1208 (holding "in the absence of exceptional circumstances," deference should be given to trial court).

■ In reviewing the record for clear error, "the reviewing court should consider the entire record of voir dire; it need not limit itself to arguments or considerations that the parties specifically called to the trial court's attention so long as those arguments or considerations are manifestly grounded in the appellate record." *Watkins*, 245 S.W.3d at 448 (citing *Young v. State*, 826 S.W.2d 141 (Tex.Crim.App. 1991); *Vargas v. State*, 838 S.W.2d 552, 556 (Tex.Crim.App.1992); *Miller–El v. Dretke*, 545 U.S. 231, 241 n. 2, 125 S.Ct. 2317, 2326, 162 L.Ed.2d 196 (2005) (in context of federal habeas corpus review under 28 U.S.C. section 2254, federal court could consider entirety of appellate record with respect to voir dire and make comparative-juror analysis in determining plausibility of prosecutor's race-neutral explanations, though state court was apparently never specifically asked to make comparative-juror analysis during *Batson* hearing)). The Supreme Court has repeatedly instructed that we are to consider "all relevant circumstances." *Miller–El*, 545 U.S. at 240, 125 S.Ct. at 2325 (citing *Batson*, 476 U.S. at 96–97, 106 S.Ct. 1712, 90 L.Ed.2d 69).

"Those 'circumstances' were the facts discerned by the trial judge during his supervision of the voir dire." *Young*, 826 S.W.2d at 145.

In *Young*, the Court of Criminal Appeals held that "while a defendant is not required to request the trial court make a comparison analysis of the reasons given for striking various venirepersons in order to preserve the issue for an appellate determination, such defendant is limited to the evidence in the record to support such analysis." *Cornish v. State*, 848 S.W.2d 144, 145 (Tex.Crim.App.1993) (en banc) (interpreting *Young*, 826 S.W.2d at 144). Where juror information cards are not before the trial court in evaluating the *Batson* claim, we may not consider them in evaluating the *Batson* claim on appeal. *Vargas*, 838 S.W.2d at 556–57. However, when the proponent of the *Batson* challenge points out information in juror information cards, bringing the comparison of the cards to the trial court's attention, the information can properly be considered on appeal. *Cornish*, 848 S.W.2d at 145 (holding cards could be considered on appeal and noting "it is apparent that the parties and the trial judge regarded the juror information cards as a significant part of the evidence upon which a resolution of appellant's *Batson* claim would depend.").

The United States Supreme Court has recognized several non-exclusive factors to consider in determining whether a party has met its burden to show purposeful discrimination. *Watkins*, 245 S.W.3d at 448–49 (citing *Miller–El*, 545 U.S. at 240, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005)). Specifically, we consider the collective and cumulative impact of the following non-exclusive factors:

- whether the proponent of the peremptory challenge exercised its challenges to eliminate a far greater proportion of jurors of the same race of the juror in question;
- whether the reasons offered for striking the juror in question "appeared to apply equally well" to other jurors of a different race who were not struck;
- whether the proponent of the peremptory challenge utilized its option to shuffle the jury panels in a manner that supported an inference of race discrimination;
- whether the proponent of the peremptory challenge directed questions expressly designed to elicit grounds for peremptory challenges disproportionately, in a manner that suggested an intent to single out jurors of an identified race for elimination; and
- whether the proponent of the peremptory challenge had followed a formal policy to exclude jurors of an identified race.

*Id.*

## C. Analysis

In the instant case, we need not address whether appellant established a prima facie case; after the prosecutor has articulated reasons for the strikes and the court has made a ruling on the ultimate question of intentional discrimination, the issue becomes moot. *See Young*, 283 S.W.3d at 866. Accordingly, we turn to "the record of the *Batson* hearing and voir dire examination" to determine if the trial court's ruling was "clearly erroneous." *Id.*

Here, appellant concedes that the State proffered race-neutral explanations for striking juror numbers 7 and 39: that the jurors were "unemployed" and provided "no information on his juror information card," respectively. *See Bridges v. State*, 909 S.W.2d 151, 155 (Tex.App.-Houston [14th Dist.] 1995, no pet.) (concluding that juror's status as unemployed is "facially race neutral explanation" for peremptory strike); *Moore v. State*, 265 S.W.3d 73, 86

(Tex.App.-Houston [1st Dist.] 2008, pet. dism'd, pet. improv. granted) (stating that "[a] prospective juror's failure to complete his or her juror information card has been held a legitimate basis for a peremptory challenge"); *Jones v. State*, 845 S.W.2d 419, 421 (Tex.App.-Houston [1st Dist.] 1992, pet. ref'd) (stating that "[c]ounsel rely heavily on juror information forms, and careless or incomplete preparation of the form is an appropriate race-neutral factor for a prosecutor to consider"). Accordingly, our focus is on the third *Batson* step, i.e., whether appellant established purposeful discrimination and, thus, whether the trial court committed clear error by overruling appellant's *Batson* challenge. We turn to the factors recognized in *Miller–El* as relevant to the third inquiry concerning the plausibility of the race-neutral explanation.

Appellant concedes in his brief that three of the five recognized relevant factors are not present in this case: 1) the State did not request a jury shuffle; 2) the State did not question African–American venire members differently than non-minority panel members; and 3) there is no evidence of a formal policy used by the prosecutor to strike members of a particular race. *See Watkins*, 245 S.W.3d at 448–49. Appellant contends, however, that the other two relevant factors are present. Specifically, appellant argues that the trial court's determination was clearly erroneous in light of the prosecutor's disproportionate use of strikes on African–Americans and comparative analysis of similarly situated non-minorities.

### Disproportionate Strikes

First, appellant points out that the State used a disproportionate number of strikes to eliminate African–American venire members. The original panel consisted of 65 people, 14 (or 21.54%) of whom were African–American. After venire members were removed for cause, the strike zone of 32 people included 11 (or 34.38%) African–Americans. The prosecutor used seven of his ten strikes to eliminate African–Americans. Appellant conceded at trial and on appeal that one of the seven African–Americans "would have a problem for everybody" and, therefore, was not part of his *Batson* challenge. Thus, appellant's *Batson* challenge only related to six (or 60%) of the State's strikes. Appellant used one (or 10%) of his strikes to eliminate an African–American from the panel. After the parties made their strikes, the jury consisted of twelve jurors, three (or 25%) of whom were African–American and three (or 25%) of whom were Hispanic. Had appellant not struck an African–American panel member, there would have been four African–American jurors, representing 33.33% of the twelve-person jury.

■ Appellant is correct in noting that the State used a statistically disproportionate number of strikes on African–American venire members. However, a disproportionate use of strikes, alone, does not establish that a trial court was clearly erroneous in finding that the prosecutor's explanations were not pretextual. *See Watkins*, 245 S.W.3d at 452. We consider the disproportionality in light of the other relevant factors. *Id.*

### Comparative Analysis

Appellant argues that, in addition to the disproportionate use of strikes, "a comparative analysis of the venire indicates a disparate treatment" of African–Americans. Specifically, appellant asserts that the State executed strikes against juror numbers 7 and 39, who were African–Americans, but did not strike similarly situated non-African-American jurors. To support his comparative analysis, appellant relies almost exclusively on facts provided by the venire members in their juror infor-

mation cards. The juror information cards were not admitted into evidence, and neither the parties nor the trial court discussed the specific information on the non-minority juror cards at trial. A preliminary issue exists as to whether appellant can rely on this information to support his comparative analysis.

 While a defendant can make a comparative analysis for the first time on appeal, the argument must be limited to *"evidence presented to the trial judge* during voir dire and the *Batson* hearing." *Young v. State,* 826 S.W.2d at 145–46 (emphasis added). Where the basis for the comparison is not in evidence or presented to the trial court, either at the voir dire or at the subsequent *Batson* hearing, an appellate court may not consider it in evaluating the *Batson* claim. *Cornish v. State,* 848 S.W.2d at 145; *Vargas v. State,* 838 S.W.2d at 557(holding that juror information cards "not mentioned or offered into evidence by either side" could not be considered). However, in *Cornish,* the Court of Criminal Appeals held that juror information cards, although not admitted into evidence, could be considered on appeal where "defense counsel specifically referred to the juror information cards for the purposes of a comparison analysis" at trial and both parties and the trial judge relied on the information in the *Batson* hearing. 848 S.W.2d at 145. In *Cornish,* the State's proffered explanation was that the venire member did not have children, and defense counsel responded by pointing out to the trial judge that other nonminority panel members also indicated on their juror information cards that they did not have children but were not struck. *Id.* at

144. Accordingly, the Court rationalized that consideration of the juror information cards was proper on appeal because the record demonstrated that the comparative information from the cards was considered by the trial court. *Id.* at 145.

 In the present case, although we have obtained the juror information cards in a sealed, supplemental record, the trial record establishes that appellant did not introduce any of the juror cards into evidence and did not present comparative analysis of the similarly situated panel members to the trial court. *See Crew v. State,* No. 05–08–00959–CR, 2009 WL 2712386 (Tex.App.-Dallas Aug. 31, 2009, no pet. h.) (declining appellant's request to "look to juror questionnaires not specifically referenced by the trial court during the hearing or admitted by the trial court as evidence"). However, the prosecutor gave race-neutral explanations for panel members 7 and 39 based on the information in those particular members' juror information cards. Accordingly, the information cards for those two particular panel members can be considered on appeal. *See Cornish,* 848 S.W.2d at 145. The comparison information of the non-minority panel members was never pointed out to the trial court. Thus, we cannot assume that the trial court considered those cards in making its determination.

Further, appellant failed to offer any rebuttal argument.[6] The court gave appellant the opportunity to respond to the prosecutor's race-neutral explanations, but appellant indicated he did not have anything further. This court has previously held that where appellant's trial counsel indicated he "had nothing further," follow-

---

6. We find it significant that defense counsel did not even make a general argument that he believed the explanations to be a pretext; rather, he did nothing to put the court on notice that he was not satisfied with by the prosecutor's race-neutral explanations. Accordingly, nothing in the record brings the non-minority panel members' information cards into consideration.

ing the prosecutor's explanation for her strikes, that the appellant did not attempt to rebut the race-neutral explanation and therefore failed to meet the burden of persuasion on the challenge. *McKinney v. State,* No. 01–05–00804–CR, 2006 WL 2042517, *3 (Tex.App.-Houston [1st Dist.] 2006, no pet) (mem. op., not designated for publication). Similarly, some courts have held that held that once the prosecutor offers reasons for its peremptory challenges, a defendant must state his continuing objection in order to preserve appellate consideration under the third prong of *Batson.* *United States v. Arce,* 997 F.2d 1123, 1127 (5th Cir.1993) (holding that "[b]y failing to dispute the prosecutor's ... explanation in the district court, defendants have waived their right to object to it on appeal."); *United States v. Rudas,* 905 F.2d 38, 41 (2d Cir.1990) ("Once the Government has offered reasons for its peremptory challenges, defense counsel must expressly indicate an intention to pursue the *Batson* claim.... By failing to dispute the Government's explanations, [defense counsel] appeared to acquiesce in them.").

■ We also note that not making the comparative analysis to the trial court is distinguishable from failing to make any argument whatsoever in response to the prosecutor's race-neutral reasons. *See Young,* 826 S.W.2d at 142, 146 (holding that comparative analysis, pointing to specific testimony, may be made for first time on appeal, where defense counsel offered general rebuttal argument and "quarreled with the State's reason" at trial). In other words, the authority allowing for a comparative analysis for the first time on appeal does not excuse defense counsel from making any rebuttal argument whatsoever.

Our consideration should end here. However, even when we compare the information in the juror cards, appellant's argument still fails.

### a. Juror Number 7–Mr. Baldwin

■ With regard to juror number 7, Mr. Baldwin, the prosecutor explained, "that person is unemployed and I wanted people with jobs on the jury." For the first time on appeal, appellant points to information from juror number 14's juror information card to support his comparative analysis argument. Appellant asserts that, juror number 14, a white male, was similarly situated, as he was also unemployed, but was not struck.

Even assuming that we could properly consider the information contained in the juror cards not brought to the attention of the trial court, we note that the juror information card of juror 7 is significantly different from that of juror 14. Juror 7, the struck juror, identified his occupation as "unemployed" and his employer as "N/A." In contrast, juror 14 identified his occupation as "maintenance." Although juror 14 wrote "unemployed" in the space provided to identify his employer, in addition to describing his typical field of employment, he also wrote that he had only been unemployed for a period of two months. Juror number 7 did not provide any such qualifying information. The cards thus belie appellant's contention that these jurors were similarly situated and that the State treated these alleged similarly situated jurors differently. Appellant's comparative analysis between jurors 7 and 14 is not persuasive.

### b. Juror Number 39–Mr. Boone

■ In regard to juror number 39, the prosecutor explained that he "put in no information on his juror information card."[7] Appellant concedes in his brief

---

**7.** Appellant notes in his brief that "the juror

information card does not list Juror 39, Mr.

that "the juror information card does not list Juror 39, Mr. Boone's race," but, nevertheless, asserts that the prosecutor's explanation for striking juror number 39 is "completely false." Specifically, appellant asserts that, "Mr. Boone's juror card is completely filled out with the exception of his race and the type of accidental bodily injury Mr. Boone had experienced."

■ "[P]retext is not shown merely because an explanation is factually incorrect." *Greer v. State*, 310 S.W.3d 11, 16 (Tex.App.-Dallas 2009, no pet.) (citing *Johnson v. State*, 68 S.W.3d 644, 649 (Tex. Crim.App.2002)). "But when the State's explanation for striking a juror is clearly contrary to the evidence," courts have held that "there is no innocent mistake and reversed for *Batson* error." *Id.* (citing *Reich–Bacot v. State*, 789 S.W.2d 401, 404–05 (Tex.App.-Dallas 1990) (reversing conviction where prosecutor's only reason for peremptory strike was flatly contradicted by venire member's answers during voir dire), pet. dism'd per curiam as improvidently granted, 815 S.W.2d 582 (Tex.Crim. App.1991)).

Appellant argues that the State's explanation here is clearly contrary to the evidence, demonstrating pretext. Appellant's argument is premised on his interpretation of the prosecutor's statement as suggesting that the venire member put no information *at all* on his juror information card. However, on appeal, we are called to assess whether the trial court's determination was clearly erroneous after review of the record "in the light most favorable to the trial court's ruling." *Young*, 283 S.W.3d at 866.

■ Appellant's argument suggests that we make two factual findings because it requires us to first make a factual finding regarding the meaning of the prosecutor's explanation and then to, based on that interpretation, move to the "ultimate inquiry" of whether the prosecutor "is telling the truth in his ... assertion that the challenge is not race-based." *United States v. Bentley–Smith*, 2 F.3d 1368, 1375 (5th Cir.1993). As previously noted, appellant's interpretation of the statement runs afoul of the "clearly erroneous" standard of review. "Where there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). We must give great deference to credibility and demeanor determinations made by the trial court in connection with a *Batson* inquiry. *Snyder*, 552 U.S. at 477–79, 128 S.Ct. at 1208 (observing that "the best evidence of discriminatory intent often will be the demeanor of the attorney who exercises the challenge"). We may not substitute our opinion for the trial court's factual assessment of the neutrality of the prosecutor's explanation for exercising strikes. *Gibson v. State*, 144 S.W.3d 530, 534 n. 5 (Tex.Crim.App.2004); *see Snyder*, 552 U.S. at 477–79, 128 S.Ct. at 1208 (holding "in the absence of exceptional circumstances," deference should be given to trial court).

Like appellant's argument, the dissent first interprets the statement in the light *least* favorable to the trial court's decision, finding that the prosecutor's statement was "objectively false." Substituting its opinion for the trial court's factual assessment, the dissent then concludes that the prosecutor's strikes were race-based.

Boone's race." Appellant notes that trial counsel in making the *Batson* challenge listed number 39 as part of his challenge and ar-

gues that the unobjected-to statement is sufficient to show Juror 39 was African–American.

■ Appellant concedes that juror number 39's information card was not completely filled out, and, accordingly, we cannot conclude that the prosecutor's explanation was "clearly contrary to the evidence" demonstrating pretext, as suggested by appellant. *See Greer*, 310 S.W.3d at 16. It was, in fact, missing information about the venire member's race, occupation, employer, and type of bodily injury he had sustained. As explained by the Court of Criminal Appeals, "Even if the prosecutor was mistaken or exaggerating . . ., 'this is not equal to proving that the reason given [for the peremptory challenge] was pretext for a racially motivated strike.'" *Watkins*, 245 S.W.3d at 450 (quoting *Ford v. State*, 1 S.W.3d 691, 693 (Tex.Crim.App.1999)). Thus, even if we were to strain the prosecutor's words to suggest that juror number 39 provided absolutely no information, the explanation is not "clearly contrary."[8] *Compare Greer*, 310 S.W.3d at 16.

■ In his brief, appellant also makes a comparative analysis between the juror information card of juror number 39 and the cards of nonminority panel members. Appellant notes that the juror's card contains some information and is partially completed. In support of his comparative analysis complaint regarding juror number 39, appellant complains that juror numbers 11, 15, and 32, who were not African–American, also did not fill out their cards in their entirety, and yet the State did not strike these jurors. Appellant did not present these comparative analysis arguments to the trial court and did not introduce these juror cards into evidence or even refer to the identified jurors or juror cards during the *Batson* hearing. *See Crew*, 2009 WL 2712386. Even assuming we can consider appellant's argument on appeal, we note that juror number 39 failed to fill out his race, type of bodily injury sustained, and had written "N/A" for occupation, employer, work phone, and length of employment, thus leaving significant portions of his juror card incomplete. With regard to appellant's complaint that the State did not strike similarly situated non-African-American jurors who had also not completely filled out their cards, the State also struck at least three other jurors whose cards were also not completely filled out, one of whom was white. The two other jurors were African–American, but the State offered other facially neutral reasons in support of striking of these two jurors,[9] and appellant agrees that there is no evidence in the record to rebut these facially neutral reasons. Where, as here, the State strikes most, but not all, similarly situated venire members, we are unable to say that the strike at issue was racially motivated. *See Watkins*, 245 S.W.3d at 453.

With regard to jurors 11 and 32, who were not African–American and were not struck, these jurors failed to identify either their wives or their wives' occupations. In contrast, the omitted information in juror number 39's card pertained to the juror's own occupation and employment status. Also, appellant fails to note the comparative factors that are unfavorable

---

8. The record indicates that the *Batson* challenge and the prosecutor's response occurred "[a]t the bench." Because of the close proximity to the judge, it is possible that the prosecutor was pointing to particular fields on the juror information card as he explained that juror number 39 put no information. The fact that appellant's trial counsel never disputed the explanation at trial is further indi-

cation that all parties understood his explanation to be either an exaggeration or referring to particular missing information.

9. The State explained that one of these jurors had admitted to previously serving on a jury that "hung" and another juror had a "history of bad checks."

to his argument. For instance, juror number 11 volunteered that he had strong feelings about drugs, and appellant exercised one of his strikes against him. Clearly, this is a significant difference that would make him a favorable juror to the prosecution in a drug related case, despite his failure to completely fill out his juror information card. As indicated in *Miller–El*, where the comparative analysis reveals that a similarly situated juror has other "significant difference," pretext cannot be shown. 545 U.S. at 247, 125 S.Ct. 2317.

In regard to juror number 15, there is no information in the record before us pertaining to her race. However, we note that appellant's own trial counsel exercised a strike against her, which is some evidence that she was likely favorable to the prosecution. Further, the voir dire record in this case is replete with unidentified comments by venire members favorable to the prosecution. In most instances, the attorneys identified the venire members by name, but appellant's trial counsel failed to identify the sources of numerous comments that would have been favorable to the prosecution. Any of these could have been made by juror number 15.

There is nothing in the record that demonstrates that the trial court's decision was clearly erroneous. Appellant had the opportunity and obligation to develop the record,[10] but failed to avail himself of those opportunities. Accordingly, we cannot read the scant record as appellant suggests. Appellant has not met his burden of persuasion to show the strikes were motivated by race and that the prosecutor's explanations were pretextual.

As appellant concedes, most of the *Miller–El* factors are not present. *See* 545 U.S. at 240, 125 S.Ct. 2317 (finding a *Batson* violation where all five relevant factors were present). Based upon the above considerations, we hold that the trial court's finding that appellant did not establish purposeful discrimination was not clearly erroneous and, thus, that the trial court did not err in denying appellant's *Batson* challenge. Because the record, when read in the light most favorable to the court's ruling supports the resolution of the fact question, "we cannot say that [the trial court] clearly erred, even though the record might support an opposite resolution as well." *Watkins*, 245 S.W.3d at 457.

We overrule appellant's first issue.

### Enhancement Paragraphs

■ In his second issue, appellant contends that the evidence was legally insufficient to show that his two prior convictions were final for enhancement purposes under section 12.42 of the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 12.42 (Vernon Supp. 2009).

Section 12.42(d) of the Texas Penal Code provides,

> Except as provided by Subsection (c)(2), if it is shown on the trial of a felony offense other than a state jail felony punishable under Section 12.35(a) that the defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction he shall be punished by imprisonment in the Texas

---

10. For instance, appellant's trial counsel did not cross-examine the prosecutor, *Salazar v. State,* 795 S.W.2d 187, 192–93 (Tex.Crim.App. 1990), offer argument or evidence (such as the juror information cards) refuting the prosecutor's race-neutral explanation, *id.,* or attempt to discover the prosecutor's voir dire notes and offer them into evidence. *See, e.g., Pondexter v. State,* 942 S.W.2d 577, 582 (Tex. Crim.App.1996) (holding that appellant is entitled to prosecutor's voir dire notes if they were actually used to refresh his memory).

Department of Criminal Justice for life, or for any term of not more than 99 years or less than 25 years.

TEX. PENAL CODE. ANN. § 12.42(d).

Here, the indictment alleged two enhancement paragraphs. The first paragraph alleged that appellant had been convicted in 1997 of the felony offense of possession with intent to deliver a controlled substance. The second paragraph alleged that before the commission of the primary offense and after the conviction for the 1997 offense had become final, appellant had been finally convicted of the felony offense of evading arrest with a motor vehicle. Prior to trial, in regard to the enhancement paragraphs, appellant pled "not true at this time."

After the jury found appellant guilty, appellant signed a stipulation of evidence that he had been convicted of the offenses alleged in the enhancement paragraphs in the indictment, namely the evading arrest offense in 2002 and the delivery of controlled substance offense in 1997.[11] At the punishment hearing, the trial court read appellant's stipulation into the record and then confirmed with appellant and his trial counsel that appellant was stipulating to his convictions for the offenses identified in the enhancement paragraphs. The following exchange then occurred:

> [Trial court:] You understand if I approve this stipulation and enter it into evidence, this will effectively mean that *your plea of not true will be changed to true* and you are waiving the right to have the State prove beyond a reasonable doubt that you are one and the same [person] who was previously convicted of these offenses? Do you understand that?
>
> [Appellant:] Yes, sir.

> [Trial court:] Have you talked it over with your attorney?
>
> [Appellant:] Yes, sir.
>
> [Trial court:] *You understand that makes the minimum punishment that the Court could assess in this case is 25 years in the penitentiary?* Do you understand that?
>
> [Appellant:] Yes, sir.

(Emphasis added). The trial court then confirmed with appellant's trial counsel that he had reviewed these matters with appellant and that he believed appellant understood these matters. The trial court then approved the stipulation, entered the stipulation into evidence, confirmed that the judgments and sentences from the enhancement convictions were part of the stipulation and were included in the record, found the allegations in the enhancement paragraphs to be true, and sentenced appellant to 25 years confinement.

The trial court clearly explained to appellant and his counsel that, based upon the stipulation, it intended to find the enhancement paragraph true and sentence appellant accordingly. The trial court also clearly explained to appellant that, with his stipulation, he was changing his plea to the enhancement paragraphs from "not true" to "true." The trial court's judgment is consistent with the proceedings in the trial court because it recites that appellant pled true to both enhancement paragraphs. We conclude that appellant's entry into the stipulation of evidence and plea of "true" before the trial court constituted sufficient evidence to support the finality of the enhancement allegations. *See Wilson v. State*, 671 S.W.2d 524, 526 (Tex.Crim.App. 1984); *Harvey v. State*, 611 S.W.2d 108, 111 (Tex.Crim.App.1981); *Dinn v. State*, 570 S.W.2d 910, 915 (Tex.Crim.App.1978); *Kent v. State*, 879 S.W.2d 80, 83–84 (Tex.

---

11. Appellant also stipulated to a conviction for one other offense.

App.-Houston [14th Dist.] 1994, no pet.). Accordingly, we hold that the evidence was legally sufficient to show that appellant's two prior convictions were final and that the trial court did not err in sentencing appellant accordingly.

We overrule appellant's second issue.

### Jury Argument

■ In his third issue, appellant contends that the trial court erred in overruling his objection to the State's improper jury argument that he was a "dope dealer," "not just an addict," and "the problem." Appellant complains of the following arguments:

> [State]: Now I'm going to tell you, a case like this is different from some young adult who's busted having a marijuana cigarette in his pocket. Okay? This is different from that. This is not someone who is young trying to experiment. This is not the addict who is a slave to the substances given to him. This is the problem.
>
> [Appellant]: ... this is improper final argument, Judge.
>
> [Trial court]: That will be overruled.
>
> [State]: This defendant is the problem. He comes in here trying to tell you that he didn't do this when we have an officer that saw him come in. There's no doubt this stuff is illegal. There's no doubt that it's Ecstacy. There's no doubt it is the amount that we say it is.
>
> When you go back there, do not abandon your common sense. Do not—you know, when this case is over, you're going to be able to go back and talk to your family, you're going to be able to talk to your friends.... Don't tell them you let a dope dealer back on the street.

> [Appellant]: That's an improper plea for law enforcement. I object to it Your Honor. .
>
> [Trial court]: That will be overruled.

On appeal, appellant asserts that "[w]hile there might arguably have been some evidence to infer an intent to deliver, the State had the opportunity to charge appellant with possession with the intent to deliver but chose not to."

■ Proper jury argument is limited to (1) summation of the evidence presented at trial, (2) reasonable deductions from that evidence, (3) answers to opposing counsel's argument, and (4) pleas for law enforcement. *Jackson v. State,* 17 S.W.3d 664, 673 (Tex.Crim.App.2000); *Swarb v. State,* 125 S.W.3d 672, 685 (Tex. App.-Houston [1st Dist.] 2003, pet. dism'd). To determine whether a party's argument properly falls within one of these categories, we must consider the argument in light of the entire record. *Swarb,* 125 S.W.3d at 685.

In *Davis v. State,* 830 S.W.2d 762, 766 (Tex.App.-Houston [1st Dist.] 1992, pet. ref'd), the defendant was charged with possession of narcotics, and during closing argument, the State argued that the jury could infer from the evidence that the defendant intended to sell narcotics and was "out there selling dope." The trial court overruled appellant's counsel's relevance objections. *Id.* In considering these arguments on appeal, this Court noted that "[a] prosecutor may freely draw inferences from the evidence as long as they are reasonable, fair, legitimate, and offered in good faith." *Id.* (citing *Gaddis v. State,* 753 S.W.2d 396, 398 (Tex.Crim. App.1988)). The evidence in that case "showed that the [defendant] was arrested in a neighborhood notorious for its use as a forum for drug transactions," the defendant "attempted to dispose of a matchbox which contained 21 individually wrapped

bags" of narcotics, and the defendant had on his person $671 in small bills at the time of his arrest. *Id.* We concluded, based upon this evidence, that the State's inference that the defendant "was a drug dealer [was] reasonable, fair, legitimate, and offered in good faith," and, thus, the argument was permissible. *Id.*

Similarly, in *Akin v. State*, 981 S.W.2d 297, 300 (Tex.App.-Texarkana 1998, no pet.), the defendant complained that the State, during closing arguments, had characterized him as dope dealer, when he had been charged only with possession of narcotics. The Texarkana Court of Appeals concluded that the State's argument "constituted a proper plea for law enforcement," and it stated that although the defendant had been tried for possession, "evidence of the amount of the contraband in his possession, together with evidence that he frequented the area where drug sales commonly occurred, and testimony that the officers saw him with a known drug trafficker, was sufficient to allow the prosecutor to draw the inference that [the defendant] possessed the contraband for the purposes of sale." *Id.; see also Soto v. State*, 810 S.W.2d 861, 864 (Tex.App.-Fort Worth 1991, pet. ref'd) (finding any reference to defendant in possession case as being "drug dealer" to be "a reasonable inference from the record" based upon evidence of "drug manufacturing paraphernalia and weapons"); *Wiltz v. State*, No. B14-90-00620-CR, 1993 WL 322923 (Tex.

App.-Houston [14th Dist.] Aug. 26, 1993, pet. ref'd) (noting that "prosecutor's argument in a drug prosecution allowing a jury to infer that the defendant intended to sell drugs in his possession has been found permissible" by Texas courts).[12]

The facts in the present case are similar to those in *Davis* and *Akin*. Here, although appellant was charged with possession of ecstacy, officers testified that appellant possessed bags that contained, among other things, individually sealed bags containing ecstacy pills. Appellant was also found in a business that a reasonable fact finder could have concluded was operating as a front for dealing narcotics. There were large amounts of narcotics and narcotics paraphernalia discovered in the business. Appellant was also found to have on his person $1200 and a drug ledger, which Officer Sinegal testified was a book used by drug dealers to record information pertaining to narcotics transactions. The book found on appellant contained names, dollar amounts, and types of narcotics. We conclude that the State's references to appellant as a "dope dealer," "not just an addict," and "the problem" constituted legitimate pleas for law enforcement and were based upon reasonable deductions from the evidence and, thus, the trial court did not err in overruling appellant's objections to these arguments.

We overrule appellant's third issue.

---

**12.** In support of his argument that the State's jury argument was improper, appellant cites *Carr v. State*, No. 06-99-00156-CR, 2000 WL 1160686 (Tex.App.-Texarkana Aug. 17, 2000, pet. ref'd). In *Carr*, in evaluating a claim for ineffective assistance, the Texarkana Court of Appeals considered the defendant's counsel's failure to object to the State's argument that the defendant was a "big fish" in the local narcotics scene. *Id.* at *4. The court concluded that the State's "big fish" argument and the State's comparison of the culpability of a drug dealer versus a drug user was improper because the defendant "was on trial for possession of cocaine and not for selling it, and for the further reason that there is nothing in the record from which any inference could be drawn that [the defendant] was a major player on the local drug scene." *Id.* To the extent that some of the language in *Carr* can be construed as conflicting with *Davis* and *Akin*, we find the reasoning in *Davis* and *Akin* to be more persuasive.

## Conclusion

We affirm the judgment of the trial court.

Justice JENNINGS, dissenting.

TERRY JENNINGS, Justice, dissenting.

The trial court's finding that appellant, Jamal Lance Adair, did not prove purposeful discrimination in the State's use of a peremptory strike against venire member 39, an African–American, is clearly erroneous, and the majority errs in holding to the contrary. In fact, the clerk's record reveals that the State's sole explanation for striking venire member 39, i.e., that he provided "no information" on his juror information card, is objectively false. Accordingly, I dissent.

Contrary to the majority's assertion that one has to "strain the [State's] words" to show that it meant that venire member 39 "provided absolutely no information," the simple fact is that "no information" means "*no* information." There is no other permissible view of the State's use of the words "no information." Also, there is nothing in either the clerk's record or the reporter's record to support the majority's assertion that "it is possible that the [State, at the bench,] ... point[ed] [out to the trial court] particular fields on the juror information cards as [it] explained that [venire member] 39 put no information [on it]." The majority's implication that the State merely exaggerated its reason for striking venire member 39 defies reason, and the State, itself, never asserted such an argument.

Moreover, the majority errs in concluding that appellant's trial counsel was required to make an argument to the trial court rebutting the State's proffered rea-

son for striking venire member 39. The law is well-settled that we are to consider the "entire record," which obviously includes the clerk's record, in our review for clear error under *Batson*.[1] *See Watkins v. State*, 245 S.W.3d 444, 448 (Tex.Crim.App. 2008). Under *Batson*, the State must "stand or fall on the plausibility of [its] reasons" for striking a juror. *Miller–El v. Dretke*, 545 U.S. 231, 252, 125 S.Ct. 2317, 2332, 162 L.Ed.2d 196 (2005). As an appellate court, we are not, as does the majority, to "imagine a reason [for the State] that might not [be] shown up as false." *Id.* "[W]hen the State's explanation for striking a juror is clearly contrary to the evidence, ... there is no innocent mistake" and the case must be "reversed for *Batson* error." *Greer v. State*, 310 S.W.3d 11, 16 (Tex.App.-Dallas 2009, no pet.).

In his first issue, appellant argues that the trial court erred in denying his *Batson* challenge to the State's use of its peremptory strike against two African–Americans, venire members 7 and 39, because the State used 60% of its peremptory strikes against African–Americans when the eligible panel was made up of 32% African Americans and the record rebuts the State's proffered race-neutral reasons for the strikes. *See Batson v. Kentucky*, 476 U.S. 79, 86, 106 S.Ct. 1712, 1717, 90 L.Ed.2d 69 (1986). In regard to venire member 39, appellant asserts that the State's representation that venire member 39 "put *no information* on his juror information card" is "completely false."

Following voir dire, the trial court asked the parties if they had any objections to seating the jury. Appellant asserted his *Batson* challenge, noting that the State had "used six of [its] ten strikes to strike blacks." The trial court responded that three African–Americans and "at least" three Hispanics were seated on the jury.

1. *See Batson v. Kentucky*, 476 U.S. 79, 86, 106 S.Ct. 1712, 1717, 90 L.Ed.2d 69 (1986).

The trial court stated that it had not previously observed any systematic racial strikes "by this particular prosecutor," and it then instructed the State to offer explanations, if it had any, for its peremptory strikes. The State then offered its reasons for striking the six African–American venire members identified by appellant in his *Batson* challenge. In regard to the two venire members identified by appellant on appeal, the State explained that it had struck venire member 7 because, among other things, he was unemployed and venire member 39 because he put "no information on his juror information card." Appellant did not offer any additional evidence or argument following the State's explanations for striking the six identified African–Americans. After this brief discussion, the trial court found the State's explanations to be race neutral and denied appellant's *Batson* challenge.

Racial discrimination has no place in a courtroom. *Edmonson v. Leesville Concrete Co., Inc.,* 500 U.S. 614, 630, 111 S.Ct. 2077, 2088, 114 L.Ed.2d 660 (1991). The use of a peremptory challenge to strike a potential juror because of race violates the equal protection guarantee of the United States Constitution. *Batson,* 476 U.S. at 86, 106 S.Ct. at 1717. Such an improper strike also violates article 35.261 of the Texas Code of Criminal Procedure. *See* TEX.CODE CRIM. PROC. ANN. art. 35.261 (Vernon 2006). In the face of perceived purposeful discrimination, a party may request a *Batson* hearing. *See id.*

In *Batson,* the United States Supreme Court provided a three-step process for adjudicating a claim that a peremptory challenge used against a venire member was based on race. *Snyder v. Louisiana,* 552 U.S. 472, 476–77, 128 S.Ct. 1203, 1207, 170 L.Ed.2d 175 (2008); *Watkins,* 245 S.W.3d at 447. The opponent of the peremptory challenge must first make a prima facie showing that the peremptory challenge was exercised on the basis of race. *Snyder,* 552 U.S. at 476–77, 128 S.Ct. at 1207; *Watkins,* 245 S.W.3d at 447. If that showing has been made, the burden of production shifts to the proponent of the strike to offer a race-neutral basis for striking the venire member in question. *Snyder,* 552 U.S. at 476–77, 128 S.Ct. at 1207; *Watkins,* 245 S.W.3d at 447. Finally, the trial court must determine whether the opponent of the strike has shown purposeful discrimination. *Snyder,* 552 U.S. at 476–77, 128 S.Ct. at 1207; *Watkins,* 245 S.W.3d at 447.

The "critical question" in determining whether the opponent of a strike has proved "purposeful discrimination" is "the persuasiveness of the prosecutor's justification for his peremptory strike." *Miller–El v. Cockrell,* 537 U.S. 322, 338–39, 123 S.Ct. 1029, 1040, 154 L.Ed.2d 931 (2003). Thus, the "ultimate inquiry" is "not whether" the prosecutor's reason is "suspect, or weak, or irrational," but whether the prosecutor *"is telling the truth* in his or her assertion that the challenge is not race-based." *United States v. Bentley–Smith,* 2 F.3d 1368, 1375 (5th Cir.1993) (emphasis added). The State's proffer of a "pretextual explanation naturally gives rise to an inference of discriminatory intent." *Snyder,* 552 U.S. at 485, 128 S.Ct. at 1212. The Supreme Court has explained,

> [W]hen illegitimate grounds like race are in issue, a prosecutor simply has got to state his reasons as best he can and *stand or fall on the plausibility of the reasons he gives.* A *Batson* challenge does not call for a mere exercise in thinking up any rational basis. If the stated reason does not hold up, *its pretextual significance does not fade because a trial judge,* **or an appeals court,** *can imagine a reason that might not have been shown up as false.*

*Miller–El v. Dretke,* 545 U.S. at 252, 125 S.Ct. at 2332 (emphasis in bold and italics added).

On appeal, a trial court's ruling on the issue of discriminatory intent must be sustained unless it is "clearly erroneous." *Snyder,* 552 U.S. at 477, 128 S.Ct. at 1207; *Watkins,* 245 S.W.3d at 447. In reviewing a record for clear error, "the reviewing court should consider *the entire record* of voir dire; *it need not limit itself to arguments or considerations that the parties specifically called to the trial court's attention* so long as those arguments or considerations *are manifestly grounded in the appellate record." Watkins,* 245 S.W.3d at 448 (emphasis added).

In determining whether a party has met its burden to show purposeful discrimination, we may consider a number of factors, including whether the proponent of the peremptory challenge exercised its challenges to eliminate a far greater proportion of jurors of the same race of the juror in question, whether the reasons offered for striking the juror in question "appeared to apply equally well" to other jurors of a different race who were not struck, whether the proponent of the peremptory challenge utilized its option to shuffle the jury panels in a manner that supported an inference of race discrimination, whether the proponent of the peremptory challenge directed questions expressly designed to elicit grounds for peremptory challenges disproportionately, in a manner that suggested an intent to single out jurors of an identified race for elimination, and whether the proponent of the peremptory challenge had followed a formal policy to exclude jurors of an identified race. *Watkins,* 245 S.W.3d at 448–49.

Here, the clerk's record clearly reveals that the State's explanation that it struck venire member 39 because he had put "no information" on his juror card is objectively false. Contrary to the State's representation to the trial court, venire member 39 answered almost all of the questions presented to him on the card:

| Questions Asked: | Answered: |
|---|---|
| Male/Female | √ |
| Race | Did not answer |
| Age | √ |
| Date of Birth | √ |
| Texas Driver's License # | √ |
| Home Phone | √ |
| County | √ |
| Have you ever been an accused, complainant, or witness on a criminal case? | √ |
| Have you ever sustained any accidental bodily injury requiring medical attention? | √ (Answered, "Yes") |
| If yes, what type? | Did not answer |
| Have you ever served on a civil jury? | √ |
| Have you ever served on a criminal jury? | √ |
| U.S. citizen? | √ |
| Your occupation | Answered "N/A" |
| Your work phone | Answered "N/A" |
| Your employer | Answered "N/A" |
| How long? | Answered "N/A" |
| Spouse's name | √ |
| Spouse's occupation | √ |
| Spouse's employer | √ |
| How long? | √ |
| Marital status | √ |
| Highest level of education | √ |
| Number of children | √ |
| Age range | √ |
| Signature | √ |

Venire member 39 provided his gender, age, date of birth, home telephone number, county of residence, driver's license number, spouse's name, spouse's occupation, spouse's employer, spouse's length of employment, number of children, and age range of his children. Venire member 39 also identified that he was married, had a high school diploma, and was a United

States Citizen. In regard to questions about his employment, venire member 39 answered "N/A" in the spaces provided for occupation, employer, work phone, and length of his employment. He noted that he had not previously served on a civil or criminal jury and had never been an accused, complainant, or witness in a criminal case. Venire member 39 also stated that he had previously suffered bodily injury requiring medical attention. In fact, venire member 39 did not answer only two questions: (1) his race and (2) the type of bodily injury that he sustained requiring medial attention. In sum, including the "N/A" answers supplied by venire member 39, he provided information in 25 of the 27 blanks on his juror card. Thus, the State's representation to the trial court that venire member 39 had provided "no information" on his juror card is objectively false. Again, "no information" means "*no* information." Also, as noted by appellant, venire members 11 and 32, who were not African–American, also did not completely fill out their juror information cards, yet the State did not strike them.

Thus, the answer to the "ultimate" question of whether the State told the truth in its assertion that its peremptory challenge to venire member 39 was not race based is clearly "no." *See Bentley Smith,* 2 F.3d at 1375. Because the State's race neutral explanation was not genuine, it is pretextual, "naturally giv[ing] rise to an inference of discriminatory intent." *Snyder,* 552 U.S. at 485, 128 S.Ct. at 1212.

Because the State's "reason does not hold up," its pretextual significance stands, and, under the governing law, the majority is not free to "imagine a reason that might not have been shown up as false." *Miller–El,* 545 U.S. at 252, 125 S.Ct. at 2332.

Accordingly, I would hold that the trial court's finding that appellant did not establish purposeful discrimination with respect to the State's striking of venire member 39 was clearly erroneous. The trial court's finding, which was based entirely upon the State's sole explanation that it struck venire member 39 because he put "no information" on his juror card, stands in stark contrast to the reality that venire member 39 answered almost every question presented to him on the card. The United States Constitution "forbids striking even a single prospective juror for a discriminatory purpose." *Snyder,* 552 U.S. at 478, 128 S.Ct. at 1208 (citing *United States v. Vasquez–Lopez,* 22 F.3d 900, 902 (9th Cir.1994)). Thus, I would further hold that the trial court erred in denying appellant's *Batson* challenge, sustain appellant's first issue, and remand the case to the trial court for a new trial. The majority's holding to the contrary and affirmance of the trial court's judgment are in serious error. It has committed an error of such importance to the State's jurisprudence that it should be corrected. *See* Tex. Gov't Code Ann. § 22.001(a)(6) (Vernon 2004).