PD-1174-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 11/3/2015 5:39:12 PM
Accepted 11/5/2015 1:45:14 PM
ABEL ACOSTA
CLERK

No. PD-1174-15

IN THE

COURT OF CRIMINAL APPEALS

OF TEXAS

*The State requests argument
only if Appellant argues*

———————————————

HENRY ANDRE WINZER

V.

STATE OF TEXAS

———————————————

FILED IN
COURT OF CRIMINAL APPEALS

November 5, 2015

ABEL ACOSTA, CLERK

*On Appeal from the 422ND Judicial District Court,
Kaufman County, Texas, in Cause Number 14-00334-422-F and
from the Fifth District Court of Appeals at Dallas
in Cause Number 05-14-01079-CR*

———————————————

**STATE'S RESPONSE TO APPELLANT'S PETITION FOR
DISCRETIONARY REVIEW**

———————————————

*Counsel of Record:*

ERLEIGH NORVILLE WILEY
KAUFMAN COUNTY CRIMINAL DISTRICT ATTORNEY

SUE KORIOTH
ASSISTANT DISTRICT ATTORNEY
SBN# 11681975
100 W. MULBERRY
KAUFMAN, TEXAS 75142
972 932-0260
*fax* 972 932-0357
suekorioth@aol.com

ATTORNEYS FOR THE APPELLEE,
THE STATE OF TEXAS

<u>IDENTITY OF PARTIES AND COUNSEL</u>:

Appellant: Henry Winzer

APPELLANT'S TRIAL COUNSEL: Gary Udashen, Katharine Reed

APPELLANT'S COUNSEL ON THIS APPEAL: Gary Udashen


APPELLEE: THE STATE OF TEXAS

APPELLEE'S TRIAL COUNSEL: Erleigh Norville Wiley, Kaufman County Criminal District Attorney, and Assistant Criminal District Attorneys Marc Moffitt and Shelton Gibbs

APPELLEE'S COUNSEL ON THIS APPEAL: Erleigh Norville Wiley, Kaufman County Criminal District Attorney; Sue Korioth, Assistant Criminal District Attorney

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL. . . . . . . . . . . . . . . . . . . . . . . . . . . . -ii-

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -iv-

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

STATE'S COUNTERPOINT
      The trial court acted within its discretion in denying appellant's
      Batson motion, and appellant failed to carry his burden to prove that
      the trial court's ruling was clearly erroneous.

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

STATEMENT OF PERTINENT FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

STATE'S COUNTERPOINT, restated. . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-

RULE 9.4 CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . -11-

## INDEX OF AUTHORITIES

CASES

*Adair v. State*,
> 336 S.W.3d 680 (Tex. App.- Houston [1st Dist.] 2010, pet. ref'd). . . . . . . -8-

*Blackman v. State*,
> 414 S.W.3d 757 (Tex. Crim. App. 2013)... . . . . . . . . . . . . . . . . . . . . . -6-7-

RULES

Tex. R. App. P. 38.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

No. PD-1174-15

IN THE

COURT OF CRIMINAL APPEALS

OF TEXAS

AT AUSTIN, TEXAS

_____

HENRY ANDRE WINZER

V.

STATE OF TEXAS

_____

TO THE HONORABLE JUDGES OF SAID COURT:

The State of Texas, appellee herein, respectfully submits this response to appellant's petition for discretionary review, and would show the Court:

<u>STATEMENT OF THE CASE</u>

Appellant Henry Andre Winzer pleaded not guilty to the indictment alleging that "he did intentionally, knowingly, or recklessly cause bodily injury to Deputy Keith Wheeler by biting Deputy Keith Wheeler, and the defendant did then and there use or exhibit a deadly weapon, to-wit: the defendant's teeth, during the commission of said assault, and the defendant knew Deputy Keith Wheeler was a public servant lawfully discharging an official duty, to wit: a deputy with the Kaufman County

-1-

Sheriff's Office detaining and arresting the defendant and Gabriel Winzer," on or about April 27, 2013. (CR: 8). He was convicted by a jury, and his punishment was assessed by the trial court in accord with a sentencing agreement at confinement for 5 years in TDCJ. (RR3: 10).

## STATE'S COUNTERPOINT

The trial court acted within its discretion in denying appellant's
Batson motion, and appellant failed to carry his burden to prove that
the trial court's ruling was clearly erroneous.

## SUMMARY OF THE ARGUMENT

Appellant failed to present an adequate appellate record upon which an appellate court can perform a thorough analysis. The State further contends that the record before the Court fails to establish that the trial court's ruling was clearly erroneous.

## STATEMENT OF PERTINENT FACTS

Appellant complains of the State's peremptory strikes of venire members Long, Mitchell, and Pickron. No juror cards or questionnaires are included in this record; no strike lists are included in the record. To the extent analysis of the complaint is possible without those items, it is necessarily limited to the reporter's record of voir dire. It is unclear in the record which juror numbers belonged to which veniremen, except for a few.

Near the commencement of voir dire, the prosecutor asked the venire, "How

-2-

many of you all people believe that a prosecutor's job is to get convictions no matter what?" Ms. Mitchell nodded in agreement. (RR3: 34).

The prosecutor instructed the venire regarding the various elements of the offense; venire member Clark, No. 12, agreed that bodily injury includes something that causes pain. (RR3: 45-47). Ms. Mitchell apparently made some gesture or expression, because the prosecutor next asked, "what about you, Ms. Mitchell, what do you think? You have some issues with it?" She asked the prosecutor, "could you repeat it again?" He asked again, the definition of bodily injury, if the State proves that it caused pain, but there's no physical injury, just in general, do you have any problem with pain being used as a definition of bodily injury?" Ms. Mitchell responded, "uh-ugh." (RR3: 48).

Panelists Brooks (34), McMahan (28), and Lennon (44) indicated that they had a problem including mere pain in the definition of bodily injury. (RR3: 48-49). Mr. Cox (21) then asked whether pain from a firm handshake would qualify as bodily injury in that definition. (RR3: 50-51). An unidentified panelist then raised his/her hand and asked, "so bodily injury is not based on the severity of the pain or injury?" The prosecutor explained that it could include any degree of pain. Ms. Pickron then raised her hand, and the prosecutor asked her, "how do you feel about that?" Pickron explained "well, based on what it says, I'd have to go with what it actually says,

which means physical pain." (RR3: 51). Ms. Ross then acknowledged that "physical pain could be subjective, so. . . ." (RR3: 52). The prosecutor then explained that a witness would have to testify to feeling pain in order to prove pain as bodily injury; another *unidentified* venire member attempted to raise a question about pre-existing injuries, but the prosecutor cut that line of discussion off and moved to another area. (RR3: 52).

The prosecutor questioned the panel regarding whether they believe people must obey police officers. Panelist 11 responded that she respected the law. An unidentified panelist responded that she would stop for an officer even if she believed he was wrong but would want to argue. The entire panel agreed that a civilian does not have a right to struggle with an officer or assault him. (RR3: 62-63).

The prosecutor polled the panel regarding their ability to consider probation. (RR3: 64-72). He asked whether any panelists had bad prior experiences with police. Ms. Hill, Mr. Carr, Mr. Lile, Mr. Clark (12), and panelist 15 raised their hands. (RR3: 74-75). He then asked again, and panelists 29, 28, Ms. Warren, and Ms. Lowe indicated that they had bad experiences with officers; Ms. Lowe indicated that she would call it "maybe" a bad experience. (RR3: 75-77). Ms. Mitchell, Ms. Pickron, and Mr. Ballard all denied bad prior experiences. Mr. Doan, Mr. Brooks, Ms Martin, Ms. Peace, Ms. Kennedy, and Mr. Matzka denied prior negative experiences, as did

Ms. Mays, Mr. Clem, Panelists 39 and 38, Mr. Petty, Ms Polk, Ms. Petty, Ms. Little, Mr. Canady, and Ms. Moore. (RR3: 76-79). Panelist 37, Mr. Ware, Mr. Lennon, Ms. Ross, and Mr. White indicated prior bad experiences. (RR3: 78-80).

The prosecutor questioned the panel about whether they "feel like the criminal justice system is unfair to minorities, blacks, hispanics? Do you feel like the criminal justice system is unfair, it doesn't treat minorities fairly?" The prosecutor asked whole rows this question, with little response. Holloway (2) responded that it was 'sometimes" unfair. (RR3: 81-82). Panel member 29 raised his/her hand and stated that "it can be." Ms. Mitchell was asked whether she agreed, and she responded, "uh-ugh." Ms. Pickron, when specifically asked, "moved head up and down." (RR3: 82). Mr. Ballard asked for clarification and then responded "no." (RR3: 82). The prosecutor continued row by row, asking Mr. Lennon (44) and Ms. Peace (33) for their opinions. An unidentified venireperson raised his/her hand. (RR3: 83). An unidentified panel member responded that he/she had such a sympathetic heart that he/she might not be able to disregard sympathy for a defendant. (RR3: 85).

Mitchell testified that she knew the prosecutor, Mr. Gibbs, because she had done a one-day internship in the office when she was considering training to be a probation officer. (RR3: 88-89).

In defense voir dire, various venire members identified State's witnesses and

officers they knew. (RR3: 89-95). Defense counsel asked again about whether the justice system was not fair to minorities. Mitchell and Pickron affirmed that they believed the system is unfair. (RR3: 122-23). Holloway explained that he believed the process did not "play out" fairly sometimes. (RR3: 123). Goble stated that "at times" the system can be unfair. (RR3: 123). Doan stated that he had "seen some cases" that were unfair. (RR3: 124). Defense counsel spoke to the venire about memory and that people sometimes incorrectly recall events; Mitchell agreed that "people get things wrong." (RR3: 125-27).

STATE'S COUNTERPOINT, restated

The trial court acted within its discretion in denying appellant's Batson motion,
and appellant failed to carry his burden to prove that
the trial court's ruling was clearly erroneous.

Under *Batson,* a defendant may be entitled to "a new array" if he can demonstrate, by a preponderance of the evidence, that the prosecutor indulged in purposeful discrimination against a member of a constitutionally protected class in exercising his peremptory challenges during jury selection. As the process has been described by the Supreme Court:

> . . . once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step one), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step two). If a race-neutral explanation is tendered, the trial court must then decide (step three) whether the opponent of the strike has proved purposeful racial discrimination.

> At the second step of this process, the proponent of the strike need only tender an explanation that is racially neutral on its face. The

ultimate plausibility of that explanation is then considered under the third step of the analysis, in which the trial court determines whether the opponent of the strike has satisfied his burden of persuasion to establish by a preponderance of the evidence that the strike was indeed the product of purposeful discrimination. Whether the opponent satisfies his burden of persuasion to show that the proponent's facially race-neutral explanation for his strike is pretextual, not genuine, is a question of fact for the trial court to resolve in the first instance.

A reviewing court should not overturn the trial court's resolution of the *Batson* issue unless it determines that the trial court's ruling was clearly erroneous. In assaying the record for clear error, the reviewing court should consider the entire record of voir dire; it need not limit itself to arguments or considerations that the parties specifically called to the trial court's attention so long as those arguments or considerations are manifestly grounded in the appellate record. [footnotes omitted].

*Blackman v. State*, 414 S.W.3d 757, 764-65 (Tex. Crim. App. 2013).

Appellant did not contest the legitimacy of the prosecutor's explanation for Long, nor did defense counsel point out anything in this record which would rebut his explanation. The record does not reflect any questions to Long, but it is not possible to conduct an independent comparative analysis, because appellant failed to request that the questionnaires and strike lists be included in this record. In addition, at various points *unidentified* venire members responded to voir dire questions, and it is not possible to tell from this record whether Long gave other responses which would have caused the prosecutor concern. (See, e.g., RR3: 51, 52, 62-63, 83, 85). The State contends that the explanation given was race-neutral and that appellant waived further review of the strike of Long by failing to present an adequate record

on appeal. Tex. R. App. P. 38.1(i); *see Adair v. State*, 336 S.W.3d 680, 687 (Tex. App.- Houston [1st Dist.] 2010, pet. ref'd).

In regard to Mitchell and Pickron, the prosecutor explained that he struck them because they had "law-enforcement issues." (RR3: 209). The record amply supports the prosecutor's concern about each.

Ms. Mitchell indicated that she agreed "that a prosecutor's job is to get convictions no matter what?" (RR3: 34). She apparently "had issues" with the concept that bodily injury includes pain, and when pressed for an opinion responded with an ambiguous "uh-ugh." (RR3: 48). When asked whether she agreed that "the criminal justice system is unfair to minorities, blacks, hispanics? Do you feel like the criminal justice system is unfair, it doesn't treat minorities fairly?", Mitchell again responded with an ambiguous "uh-ugh." (RR3: 82). Mitchell advised defense counsel that she knew the prosecutor because she had been an intern for a day years before. (RR3: 88-89). When questioned by defense counsel, Mitchell affirmed that she believed the system is unfair. (RR3: 122-23). In response to defense counsel's voir dire about memory and whether witnesses make mistakes, Mitchell agreed that "people get things wrong." (RR3: 125-27). After agreeing with defense counsel that the "system" is unfair, Mitchell backed away from that position when questioned individually by the court and the prosecutor. She offered as an example of unfairness

stories she had seen on television where she believed defendants had received disproportionate sentences. Her exchanges with the prosecutor on this and the question of whether she knew him could have been construed by the trial court as argumentative. (RR3: 174-77). The prosecutor was justified in striking Mitchell on the basis of these exchanges alone. Moreover, the prosecutor contended that he struck every venire member who expressed the same negativity about the justice system or police who was not adequately rehabilitated, and defense counsel did nothing to rebut that assertion.

In regard to Pickron, she was also struck by the defense, which would waive any statutory right appellant had to re-seat the venire member as well as any complaint that the State prevented her service.

Appellant's claims that venire members Carr and Lowe were similarly situated is incorrect. Carr had a bad experience with police, but she assured defense counsel that it would not affect her service. (RR3: 75, 95). Ms. Carr would evaluate delay in reporting an injury as part of her credibility determination. (RR3: 111-13). She agreed that memories can be faulty, (RR3: 127). The prosecutor advised that he needed to talk to Carr further. (RR3: 134). When called in to testify, Carr explained that the bad experience to which she alluded involved her nephew being arrested for drugs in a raid which messed up Carr's sister's house, but where the nephew was

guilty. It would not affect her ability to fairly render a decision, because her son was a deputy sheriff. (RR3: 142-43).

Lowe, when asked if she had any bad experience with police, responded, "I'll call it a maybe. I wasn't happy." It was "not really" a bad experience; she had a bad interaction with some female officers who responded to a disturbance call at her house. (RR3: 177-78). Both Carr and Lowe had benign interactions with police which they adequately explained. Neither believed the system is unfair in general.

In his motion for new trial, appellant again asserted the Batson issue and made an unsupported assertion that – in regard to whether the "system" is unfair to minorities – for "an African American juror to say anything other than that would be naive and probably untruthful." (CR: 95; RR6: 5). In response, the State noted for the record that Mr. Gibbs, the prosecutor who selected this jury, is an African-American, as is the elected District Attorney of Kaufman County, and that appellant's claim was itself an unfortunate stereotype based upon broad racial prejudices and pre-conceptions. (RR6: 11-12). Appellant's claim that all black venire members must have the same opinions is nonsensical. Appellant has failed to demonstrate on the incomplete record presented to this Court on appeal that the trial court's decision on the Batson motion was clearly erroneous.

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, there being legal and competent evidence sufficient to justify the verdict and no error appearing in the record of this case, the State requests that this Honorable Court will affirm the the judgment of the Trial Court below.

| | |
|---|---|
| Respectfully submitted, | ___/s/ Sue Korioth_____ |
| | SUE KORIOTH, |
| ERLEIGH NORVILLE WILEY | State Bar No. 11681975 |
| CRIMINAL DISTRICT ATTORNEY | ASST. CRIMINAL D.A. |
| KAUFMAN COUNTY, TEXAS | DISTRICT ATTORNEY'S OFFICE |
| | 100 W. MULBERRY STREET |
| | KAUFMAN, TEXAS 75142 |
| ATTORNEYS FOR THE STATE | (972) 932-4331 ext. 1264 |
| | FAX (972) 932-0357 |
| | suekorioth@aol.com |

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on the 3rd day of November 2015, a copy of the foregoing will be served on Gary Udashen, attorney for appellant, by e-service if available, or by placing U.S. Mail and by email to his email address.

___/s/ Sue Korioth_____

## RULE 9.4 CERTIFICATE OF COMPLIANCE

Using the Wordperfect 7 word count utility, I have determined that this document contains 2170 words, not including the "caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix." TRAP 9.4(I).

/s/ Sue Korioth